IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER CROFTCHECK, | : | 10-cv-908 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| COMPUTER CREDIT, INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**November 24, 2010**

## I. INTRODUCTION

Before the Court in this action asserted under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA") is Defendant Computer Credit, Inc.'s Motion ("CCI" or "Defendant") Motion for Summary Judgment (Doc. 16) and Plaintiff Jennifer Croftcheck's ("Croftcheck" or "Plaintiff") cross Motion for Summary Judgment (Doc. 22). For the reasons articulated in this Memorandum, we will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. An appropriate Order closing this case shall enter.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a

factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## III. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff initiated this action by filing a Complaint on April 28, 2010. (Doc. 1.) Plaintiff alleges that Defendant[1] violated the FDCPA based on three debt-collection notices sent to Plaintiff regarding an outstanding medical bill owed to Pinnacle Health Hospital. Specifically, Plaintiff asserts that Defendants violated

---

[1] Defendant is a debt-collection agency that provides services for healthcare entities, including sending letters to consumers for their overdue accounts. Defendant will typically send two or three letters to the consumer seeking payment, but does not purchase or sue on the overdue accounts. (Doc. 20 pp. 5-6.)

the FDCPA in the following respects:

> (a) § 1692d – using conduct the natural consequence of which is to harass or abuse the Plaintiff;
> (b) § 1692e – providing false, deceptive and misleading representations in a written communication;
> (c) § 1692e(2) – falsely representing the character, amount or legal status of the alleged debts;
> (d) § 1692e(10) – using any false representation or deceptive means to collect [] the alleged debts;
> (e) § 1692f – using fair and unconscionable means to collect a debt;
> (f) § 1692g – failing to send the required Validation Rights notice[.]

(Doc. 1 ¶ 20). Plaintiff seeks to certify a class of similarly situated individuals. (Doc. 8.) However, because we will ultimately enter judgment in Defendant's favor, we will deny that Motion to Certify as moot.

Defendant filed its Motion for Summary Judgment (Doc. 16) on August 9, 2010. Defendant maintains that it is entitled to judgment as a matter of law because "Plaintiff's Complaint is based on undisputed errors of fact that cannot support her claims for relief." (Doc. 20 p. 1.) First, Defendant notes that it did, indeed, send a validation notice[2] as required by the FDCPA, and thus Plaintiff's claims in that respect must fail. Further, Defendant maintains that the second and third communications likewise complied with the requirements of the FDCPA.

---

[2]As Defendant aptly notes, a validation notice is a statement sent to the consumer "notifying them of the specific attributes concerning the debt and their right to dispute the debt within 30 days."

In response to Defendant's Motion for Summary Judgment, Plaintiff filed a "response" that also serves as her own Motion for Summary Judgment (Doc. 22), and a brief in opposition to Defendant's Motion and in support of her Motion (Doc. 22). To avoid confusion, and because Plaintiff offers no new material in her response, we will refer to the pleadings as the opposition to Defendant's Motion. Plaintiff first abandons her allegation that Defendant failed to include the required validation notice. Plaintiff then argues that the cumulative effect of the three letters were sent as a part of a scheme to harass, abuse, and threaten the least sophisticated debtor.

## IV. DISCUSSION

We initially highlight that because Plaintiff abandoned her argument regarding the Validation Notice, there remain no disputes as to the essential facts undergirding the action, but rather disputes as to the interpretation of the FDCPA with respect to the letters received. To put a finer point on it, the sole remaining issue is whether, as a matter of law, the follow-up correspondence overshadowed or was in some way inconsistent with the initial validation letter.

As the Third Circuit has aptly articulated:

> The FDCPA was enacted in 1977 as an amendment to the Consumer Credit Protection Act "to protect consumers from a host of unfair, harassing, and deceptive collection practices without imposing unnecessary restrictions on ethical debt collectors . . . A basic tenet of the

>Act is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve the right to be treated in a reasonable and civil manner.

*FTC v. Check Investors, Inc.*, 502 F.3d 159, 165 (3d Cir. 2007) (internal quotations omitted). Under the FDCPA, debt collectors may not "engage in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with collection of a debt"[3] 15 U.S.C. § 1692d; "use any false, deceptive, or misleading representation or means in connection with the collection of any debt"[4] § 1692e; or "use unfair or unconscionable means to collect or attempt to collect any debt"[5] § 1692f. The FDCPA is not only intended to protect unsophisticated consumers, but also to protect "debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Weber v. Computer*

---

[3] Section 1692d prohibits specific behavior beyond the general application, including the use or threat of violence or criminal means to harm a person, reputation, or property; the use of profane language; the publication of a list of consumers who have not paid their debts; the advertisement for sale of any debt to coerce payment; repeatedly or continuously calling with the intent to annoy, abuse, or harass the consumer.

[4] Without detracting from application of the general principle, § 1692e prohibits myriad conduct, such as falsely representing that the collector is affiliated with the United States; falsely representing the character, amount, or legal status of any debt; threatening to take action that is illegal or not intended to be taken; falsely representing that the consumer committed a crime; et cetera.

[5] Section 1692f likewise prohibits specific conduct, such as collection of an amount that is not expressly authorized or permitted by law; solicitation of a postdated check for the purpose of threatening criminal prosecution; deposit of a postdated check early; causing charges to be made to a consumer for communication by concealing the true purpose of the communication; communicating via a post card; and others.

*Credit, Inc.*, 259 F.R.D. 33, 37 (E.D.N.Y. June 30, 2009).

The FDCPA's 2006 amendments made clear the right of the collector to seek payment within the thirty days that a consumer has to validate his or her debt:

> []Collection activities and communications that do not otherwise violate this title may continue during the 30-day period [for validation] unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b). Plaintiff's central argument is that the receipt of the subsequent letters within thirty days of the validation notice served to overshadow the previous notification regarding the thirty-day period in which she could request validation of her debt. Plaintiff argues that "the third letter sent from [CCI] within 28 days of the first letter and only 14 days after the second [letter], contains the phrases of 'FINAL NOTICE and you must take action to resolve this overdue account,' 'pay the amount due to discharge your debt owed to the hospital,' and 'be advised this is our LAST ATTEMPT to collect this debt'" and therefore imposed a sense of immediacy and overshadowed the notification of Plaintiff's rights. (Doc. 23 p. 5.)

The first letter was sent by CCI on March 22, 2010, and clearly indicated that there was "important information" on the back of the letter. The back portion

7

of the letter contained the validation notice, which stated, in pertinent part:

> FEDERAL NOTICE TO ALL CONSUMERS
> CCI will assume this debt to be valid unless you dispute the validity of the debt, or any portion thereof, within thirty days after receipt of this notice. If you notify CCI, in writing, within this thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment, as applicable, and a copy of such verification or judgment will be mailed to you. Upon written request within the thirty-day period, CCI will provide you with the name and address of the original creditor if different from the named creditor.

(Doc. 1, Ex. A.) This notice is quite clear in articulating to the consumer that they have the right to dispute the debt. Plaintiff concedes that she did, in fact, receive the validation notice, but she did not exercise her right to dispute the debt or request validation. The second letter from CCI was sent on April 5, 2010, and stated as follows:

> You have received previous notification from this office regarding your debt to Pinnacle Health Hospitals. Our records indicate that you still have not paid this debt nor have you made satisfactory arrangements to do so.
> Computer Credit, Inc. Strongly advises you to make payment in order to resolve your overdue balance of $ 113.60. We are a debt collector and we expect your cooperation.
> This letter is sent to you in an attempt to collect this debt and to serve notice that any information obtained will be used for that purpose. . . .

(Doc. 1, Ex. B.) Under any reasonable interpretation, the plain language of the letter is not inconsistent with the original notice received. In fact, this letter references the previous notification in which Plaintiff received her validation

8

notice.  Informing Plaintiff that she is "strongly advise[d]" to make a payment and that CCI expected her cooperation does not overshadow any notice that she had regarding her right to challenge the debt; it rather reasonably demonstrates CCI's attempt to collect a debt that was due in the absence of a validation.  CCI's third letter, sent on April 19, 2010, stated:

> Despite our previous communication to encourage you to pay your delinquent account with Pinnacle Health Hospitals, you still have an outstanding balance.  This is our FINAL NOTICE and you must take action to resolve this overdue account.  Pay the amount due to discharge your debt to the hospital.
> This letter is sent as a final demand for payment in the amount of $ 113.60.  Computer Credit, Inc. is a debt collector . . . Be advised this is our LAST ATTEMPT to collect this debt and any information obtained will be used for that purpose.

(Doc. 1, Ex. C.)  Much like the second letter, this letter references the previous communication and in no way suggests that the rights articulated in the first notice were no longer applicable.  Rather, the third letter clearly encouraged Plaintiff to pay the debt that she had neither disputed nor paid to date, and noted that it was the last attempt to initiate communication with her.

We find Plaintiff's that reliance on a Second Circuit case, *Saviano v. Computer Credit, Inc.*, 164 F.3d 81 (2d Cir. 1998), is misguided and that the case is unpersuasive.  In *Saviano*, the Second Circuit affirmed a district court decision that found that the defendant violated the FDCPA in the *first and only*

9

communication with the plaintiff.[6] Although that communication contained a validation notice on the back like the first letter *sub judice*, other language in the letter at issue in *Saviano* stated: "This notice will serve to inform you that your overdue balance with North Shore Hospital has been referred to Computer Credit, Inc. The hospital insists on immediate payment or a valid reason for your failure to make payment." *Id.* at 84. The Second Circuit agreed with the District Court that the contradictory language could easily confuse a consumer and make him or her doubt their ability to dispute the debt. The first letter in this action, on the other hand, specifically reminded Plaintiff that she did have the right to dispute the debt, and if she did not, CCI would assume its validity and continue with collection efforts. (*See* Doc. 1, Ex. A.)

As mentioned, we find that the least sophisticated consumer could not interpret the plain language of the subsequent letters to overshadow or nullify the rights articulated in the first. Further, we note that it is quite clear that the communications could in no way be interpreted to be abusive or threatening.[7] Therefore, we find that the communications do not violate the FDCPA.

---

[6]There was, actually, a second communication with the plaintiff, but the first letter was the only at issue in the action. *See Saviano*, 164 F.3d at 83.

[7]Indeed, beyond baldly arguing that "[t]he Court must look at the notices as a common scheme to harass, abusive [*sic*] ant [*sic*] threaten the least sophisticated debtor", Plaintiff offers no further argument with respect to that aspect.

## V. CONCLUSION

To reiterate, we find, and the parties agree, that Plaintiff first received a validation notice that properly articulated her rights under the FDCPA. We further find that the subsequent communications with Plaintiff neither overshadowed the notice she received nor would discourage a consumer from exercising his or her rights. In fact, the two subsequent letters Plaintiff received were entirely consistent with the validation notice.

We note, in closing, that the FDCPA is intended to protect consumers from unfair and deceptive collection practices; it is not a statute that can be utilized to deprive an agency of *any* effective manner of debt-collection. For the reasons articluated above, therefore, we will grant Defendant's Motion for Summary Judgment (Doc. 16), deny Plaintiff's Motion for Summary Judgment (Doc. 22), and close this action. Plaintiff's Motion to Certify (Doc. 8) is accordingly denied as moot. An appropriate order shall enter.